# SAVAGE *v.* SAVAGE.

PRACTICE—DIVORCE.—Where the defendant, in a suit for divorce, intentionally omits to take her evidence within the time prescribed by the statute, she cannot afterwards claim as a matter of right, that the suit shall be continued, and the time extended to enable her to introduce such evidence; and it is not error in the court where the suit is pending, to refuse her application for that purpose.

APPEAL from Polk County.

*R. S. Strahan and Daly & Butler*, for respondent.

*John Kelsay and W. Truitt*, for appellant.

By the Court, WATSON, C. J.:

This was a suit for divorce, on the grounds of cruel and inhuman treatment, and personal indignities practiced by the appellant upon the respondent, rendering his life burdensome. The issues having been made up, the court below, at its December term, 1881, directed the respondent to pay the appellant one hundred dollars to enable her to make her defense, and referred the cause to Chas. A. Johns, Esq., to take the evidence and report the same at the ensuing term. Respondent completed taking his evidence in the latter part of January, 1882, but as appellant was not ready to proceed with the taking of her evidence, further proceedings before the referee were postponed by mutual consent of the parties until the 8th day of April following. The parties met at this latter date, accompanied by their respective counsel, but the appellant being still unprepared or unwilling to commence, the proceeding was again postponed until the 12th day of that month. At this latter date, the parties again appeared with their respective counsel before the referee, but the appellant refused to proceed further in the matter, and entered into a written stipulation

with the respondent as follows (after giving the title of the cause):

"Now on this day comes the plaintiff, in his own proper person as well as by his attorneys, Daly & Butler, and the defendant in her own proper person, as well as by McCain & Hurley and W. Truitt, and the referee, C. A. Johns, Esq., being present, prepared to take testimony on behalf of defendant, the defendant refuses to proceed further, and by stipulation it is agreed that the plaintiff take his decree for divorce as prayed for in his complaint, and the care and custody of the minor children mentioned in his complaint, and that all the matters in controversy are considered as fully settled; the plaintiff to pay the costs of suit, and take no decree against defendant therefor.

Dated April 12, 1882.

WM. SAVAGE, plaintiff,
SARAH SAVAGE, defendant."

At the May term, 1882, the appellant appeared in the court below by counsel other than those named in the stipulation, and moved the court upon the grounds set forth in her own affidavit accompanying the motion, to vacate said stipulation, and continue the cause until the term following, to enable the appellant to take her evidence therein, which was set forth in the affidavit. The court overruled the motion, and upon the pleadings in the cause, and the evidence taken by the respondent, and reported by the referee, granted the respondent a divorce, and the care and custody of the minor children, named in the complaint; but directed that the costs of suit be paid by the respondent.

The error complained of here by the appellant is that the court below erred in overruling her said motion. The stipulation itself, so far as it related to the divorce and the care and custody of the minor children, was no doubt void.

(*Sayles* v. *Sayles,* 21 N. H., 312; *Viser* v. *Bertrand,* 14 Ark., 267.) But the question still is whether the appellant was imposed upon or mislead by it or the arrangement out of which it arose, so that she was induced to abandon her defense through ignorance or misapprehension of material facts. She says, in her affidavit, that she did not understand its provision in respect to the care and custody of the minor children; that she understood that she, and not the respondent, was to have the "care, custody, and education" of all said minors. She states no facts in her affidavit to show how the mistake on her part occurred, or might have occurred. Whether she read the stipulation, or heard it read or explained before she signed it, or whether she signed it without taking any of these precautions, and consequently without any opportunity of understanding its actual contents, is not stated.

The provisions of the stipulation are few, simple, and plainly expressed. It is impossible that the appellant could have either read or heard it read or correctly explained, and not have understood just what it meant. She was also, as the stipulation shows on its face, represented by able and experienced counsel, who could not consistently with a proper regard for their professional obligations, have suffered her to take such a step in ignorance of its nature and consequences; and there is no pretense that the respondent or any one on his behalf was instrumental in procuring the execution of the stipulation on her part. Under such circumstances the vague and general allegation on her part that she did not "understand" the written stipulation that she signed; that she supposed it contained a provision directly the reverse of what it did in fact contain—a mistake so improbable in its very nature as to demand a particular explanation of the manner of its occurrence—can hardly be

received to counter-balance, much less outweigh, the presumption arising from the fact of her having signed the stipulation, that she was acquainted with its contents and understood the plain meaning of its provisions.

The other ground stated in the affidavit is that of alleged "undue influence." The facts which are relied upon by her to show the "undue influence" are thus stated in her affidavit: "At the time I signed the stipulation, I was told by some persons, and especially by my brother, Nathan Brown, on that day, and before I signed it, that if I did not sign the stipulation the plaintiff would get a divorce from me, and take all my land, and break him, my brother, up, as I had to borrow money to carry on the suit and he had gone my security for four hundred dollars." She further states that but for the "undue influence" exercised over her by her said brother at that time, she would not have signed the stipulation. There is no ground for supposing that the respondent was concerned in this matter, and no claim that he was. Her brother's counsel seems to have been given her in good faith, and as their pecuniary interests were identical, it could not have been otherwise than well designed.

But whatever influence her brother's opinions as to the course most beneficial to both, which she could take under the circumstances, her final determination to proceed no further with the taking of evidence in her defense, and to stipulate for certain supposed advantages resulting from such a course on her part, was none the less an act of her own free will and independent judgment. She was not deceived or misled as to any material fact, nor compelled to act in opposition to her own will. If then she acted with full knowledge and unobstructed volition, with a view to her own advantage solely, she was not entitled to the relief sought by her motion, if the ordinary rules of proceeding

in equity are to govern in suits for divorce. She had knowingly and intentionally suffered the period prescribed by the statute for taking evidence in suits in equity to expire, without making any effort to introduce her evidence. She supposed, evidently, that this was her best course, under the circumstances. But she knew what evidence she could procure, and had the means at her command to procure it. And there is no pretense that she was ignorant of the law, even, or that she was not fully cognizant of the legal consequences of her failure to introduce her evidence in due season. It seems quite evident that she weighed these against the probable advantages of the opposite course, and deliberately chose the latter. That she had no legal right to come in afterwards and insist upon a further enlargement of time, in which to furnish her evidence, under such circumstances, we are fully satisfied.

It would seem strange, indeed, if the interests of the opposite party, the methodical procedure of the courts, and the positive provisions of the law, could be thus trifled with and disregarded. Under our system, the state is represented in every suit for divorce by its law officer, the district attorney of the district where the suit is pending. It is the duty of such officer to intervene on behalf of the state, where there is sufficient ground to suspect collusion or fraud in the proceeding for divorce. But a private party is as completely bound by his defaults in respect to the requirements of the law governing such suits as he would be in respect to similar requirements in suits of any other character, and he can be relieved from their effects only upon the same equitable grounds and terms. (2 Bishop on Marriage and Divorce, secs. 236, 237.) We are therefore of the opinion that the ruling of the court below, of which appellant com-

plains, was correct, and that the decree appealed from should be affirmed.

Decree affirmed.    LORD, J., concurring;   WALDO, J., dissenting.

### DISSENTING OPINION.

By WALDO, J.

The maxim *audi alteram partem*, should be construed in this case to require imperatively that the evidence the appellant had to offer should be heard. The law favors trials upon the merits (*Critcher* v. *McCadden*, 64 N. C.,) and especially so in suits for divorce, which is not a matter wholly of private concern, but the public are likewise interested in preventing divorces, except for adequate cause; and whether there is good cause or not, can only be properly determined by hearing both sides.

The reasons offered by the appellant why she failed to offer evidence in her defense, explains her conduct, and exonerates her from blame, if her delay needed any explanation where, before a decree, she asked to be heard. The order of the court denying her motion to be heard seems plainly erroneous, and to call for reversal. The discretion of the court, as is well said in *Bailey* v. *Taaffe*, 29 Cal., 424, " is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion to be exercised *ex gratia*, but a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impair or defeat the ends of substantial justice. In a plain case, this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates." See further, 23 Maine, 12.